UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

NAOMI WATSON,                          :

                    Plaintiff,         :
                                               04 Civ. 1932 (HBP)
        -against-                      :
                                               OPINION
ARTS & ENTERTAINMENT TELEVISION        :       AND ORDER
NETWORK,
                                       :
                    Defendant.
                                       :
----------------------------------X


            PITMAN, United States Magistrate Judge:


I.  Introduction


            This is a pro se employment discrimination action in

which plaintiff alleges that she was the victim of discrimination

on the basis of a disability and her race, in violation of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 -

12117 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

2000e - 2000e-17, respectively.  Plaintiff also alleges that she

was the victim of illegal retaliation, although she does not

specify whether her retaliation is asserted under the ADA, Title

VII or both.  The parties have consented to my exercising plenary

jurisdiction pursuant to 28 U.S.C. § 636(c).

            Defendant moves for summary judgment dismissing the

complaint (Docket Item 29).  For the reasons set forth below,

defendant's motion is granted in all respects, and the action is
dismissed.

II.  Facts

    A.  Plaintiff's Employment
       with Defendant

Most of the material, relevant facts are derived from
defendant's submissions which, in substantial part, are not
controverted.

Plaintiff, an African-American female, commenced
working for defendant as an Administrative Assistant on or about
February 14, 2000 (Declaration of Susan Werbe, dated May 4, 2007
("Werbe Decl."), ¶ 2 and Ex. 2 thereto; Plaintiff's Supplement in
Opposition to Defendant's Summary Judgment [Motion], Ex. 1).
During her first six months on the job, plaintiff was frequently
late for work, often absent from the office and left the office
for personal appointments on short notice (Werbe Decl. ¶ 3).
Defendant reviewed plaintiff's performance in August 2000, after
her first six months of employment.  The review contains a number
of positive comments on plaintiff's performance, but also con-
tains the following entry under the section seeking identifica-
tion of areas that need improvement:

        Naomi's hours are 10-6 and while she always puts in the
        required number of hours per day or more, she is fre-
        quently late.  We need to count on Naomi to be here at
        10 a.m. in order to answer phones and coordinate our

activities.  Since speaking to Naomi about this a
couple of weeks ago she has been arriving on time.

We have also recently asked her to take her lunch hour
between the hours of 12-2 p.m. and coordinate with
Barbara Clews so the phones are covered.  She has been
doing this.

We'd like Naomi to organize her personal appointments
to be before or after her workday as much as possible.
If need be, these can be handled by taking a personal
day which she did after we spoke about it.

It's helpful for Naomi to let us and Barbara know where
she is when she's away from her desk for periods longer
than 15 minutes.  This could be done verbally or with a
post-it on her computer screen.

(Werbe Decl. Ex. 2 at AE 00107).  The evaluation form used for

this review provided four possible grades for an employee's

overall performance:  "Consistently Exceeds Standards," "Consis-

tently Meets Standards," "Frequently Meets Standards" and "Needs

Improvement to Meet Standards."  Plaintiff was given the next-to-

lowest rating, "Frequently Meets Standards" (Werbe Decl. Ex. 2 at

AE 00108).

Despite the comments made to plaintiff in her six-month

review, her attendance issues continued into the fall (Werbe

Decl. ¶ 5 and Ex. 3 thereto).  On October 2, 2000, plaintiff's

supervisors gave plaintiff a written warning that she risked

termination if she failed to correct her attendance and lateness

issues:

Although we saw some improvements [immediately after
your six-month review], your attendance and punctuality
have worsened.  To date you have [used] seven sick days
in a period of seven months.  Additionally, taking

extended lunch hours and continuously arriving late
directly affect your and the department's productivity
and effectiveness.

Daily attendance and attention to balancing your time
off within allotted vacation and personal time as well
as reasonable sick time is critical to your perfor-
mance.  It is also important to be prompt and adhere to
your established work hours of 10:00 am - 6:00 pm.

Naomi, you need to focus on improving your attendance
and punctuality.  Coming in late and taking extended
lunch hours (i.e. taking a 2 hour lunch to go to the
credit union) is detrimental to all involved.  Please
communicate with us or HR if you have difficulties or
extenuating circumstances that may prevent you from
reaching this goal.

As always, management will be available to you to
provide support in helping you achieve this goal,
however, failure to improve your attendance and punctu-
ality will result in disciplinary action up to and
including termination.  Until further notice, you are
required to present a doctor's note when you return
after calling in sick.

We will have a follow-up meeting in sixty days from now
to examine your progress in this area.

(Werbe Decl. Ex. 5).

After this memo was delivered to plaintiff, she sent an

email to her supervisors advising them that her son suffered from

asthma and that his health-related issues were the cause of her

attendance problems (Werbe Decl. Ex. 6).

Later on in the day on October 2, 2000, plaintiff met

with Maribel Aleman from defendant's Human Resources Department,

and was counseled concerning her attendance and tardiness issues.

On the following day, Aleman sent plaintiff an email in which she

stated:

4

As a follow-up to our conversation yesterday afternoon please note that you are allowed to take vacation time during this period as long as it *is approved in advance by your supervisors.*

At this point you should take the opportunity to start on a positive note and successfully address the concerns we outlined in yesterday's meeting. You mentioned in our meeting that your son's condition was not, per se, the reason for your lateness but rather that you were not aware that coming in after 10 am was a problem. I urge you to establish a schedule where you can arrive at 10 am. If you have any difficulties with your son's condition, please advise us of it and, naturally, make up the time you may have lost in coming in late. If you are out sick, you will need to bring in a doctor's note as discussed.

Also, while we realize that you cannot always stay for overtime to complete your assignments, there might be occasions w[h]ere you will be expected to do so as the business needs may require. Again, a positive and team-oriented attitude will greatly benefit all involved.

Let's meet on Monday, October 16th (let me know what time is good for you) to follow up and discuss your progress. In the meantime, if you have any questions please feel free to call or stop by.

(Werbe Decl. Ex. 7 (bold and italics in original)).

On October 4, 2000, plaintiff sent a memo to Mr. Charles Maday, an individual for whom she had apparently done some work, seeking to be assigned to new supervisors (Declaration of Maribel Aleman, dated May 4, 2007 ("Aleman Decl."), Ex. 1). Plaintiff's request was granted, and she was reassigned to work for Charles LaPolla and Carl Lindahl (Declaration of Mark Young, Esq., dated May 4, 2007 ("Young Decl."), Ex. 4 at 59-60; Declara-

tion of Rosalind Clay Carter, dated May 4, 2007 ("Carter Decl.") ¶ 3).

Despite the reassignment, however, plaintiff's attendance issues persisted. The parties' submissions establish that between October 9, 2000 through her termination on January 11, 2001, plaintiff was absent for all or part of 23 days, as specified below. The absences for which plaintiff submitted documentary evidence of a medical appointment are indicated.

| | | |
|---|---|---|
| 10-10-00 | 4 hours out sick | Appointment with Orthopedist at 9:00 a.m.; documentary evidence submitted. |
| 10-17-00 | 3 hours out sick | Appointment with orthopedist cancelled by orthopedist on day of appointment; documentary evidence submitted. |
| 10-23-00 | Sick day | Medical note submitted. |
| 10-24-00 | 1.5 hours out sick | Medical note submitted. |
| 10-27-00 | Vacation day | |
| 10-30-00 | Vacation Day | |
| 11-07-00 | 3 hours out sick | No medical note submitted. |
| 11-14-00 | Sick Day | Appointment with orthopedist at 12:00 noon; documentary evidence submitted. |
| 11-28-00 | Sick Day | Appointment with orthopedist at 12:00 noon; documentary evidence submitted. |
| 12-05-00 | 3.5 hours out sick | No medical note submitted. |

| | | |
|---|---|---|
| 12-11-00 | 5 hours out sick | Contemporaneous email from plaintiff indicating MRI scheduled for 12-11-00; no documentation from MRI provider. |
| 12-12-00 | 3 hours out sick | No medical note submitted. |
| 12-14-00 | 3.5 hours vacation time | |
| 12-19-00 | 3 hours out sick | Appointment with orthopedist at 12:00 noon; documentary evidence submitted. |
| 12-20-00 | Sick Day | No medical note submitted. |
| 12-21-00 | Sick Day | No medical note submitted. |
| 12-27-00 | Sick Day | No medical note submitted |
| 12-28-00 | Sick Day | Appointment with physical therapist at unspecified time of unspecified duration; documentary evidence submitted. |
| 12-29-00 | Sick Day | Appointment with physical therapist at unspecified time of unspecified duration; documentary evidence submitted. |
| 01-02-01 | Sick Day | No medical note submitted. |
| 01-03-01 | Sick Day | Appointment with orthopedist at 11:00 a.m.; documentary evidence submitted. |
| 01-08-01 | 1 hr Personal Time | |
| 01-09-01 | 1.5 hrs Personal Time | |

(Carter Decl. Ex. 1; Young Decl. Ex. 3).

Plaintiff had fallen down a flight of stairs at work on October 3, 2000 (Young Decl., Ex. 2 at 25; Exs. 17 & 18), and claimed that many of her absences were the result of the injuries she sustained in this fall. Defendant, however, notes that although plaintiff's health care providers had office hours starting at 8:00 a.m. (Young Decl. Exs. 6 & 7), plaintiff consistently scheduled her appointments later in the day (see Young Decl. ¶ 3) and thereby failed to minimize the disruption that resulted from her medical appointments.

On January 10, 2001, at approximately noon, plaintiff asked her supervisors if she could leave work early and take the balance of January 10, the following day and January 16, 2001 as vacation time. Her supervisors advised that, due to the short notice, she could not take the time off (Carter Decl. Ex. 6).

Later in the day on January 10, Aleman solicited comments on plaintiff's performance from her supervisors Joseph LaPolla and Carl Lindahl. Both supervisors' comments were overwhelmingly negative. La Polla noted that plaintiff was frequently away from her desk and unable to answer his telephone, was caustic and rude to outside callers, had poor writing skills, did not have a basic grasp of the department's functions, had poor organizational and filing skills, and was either unwilling or unable to perform certain essential functions of her job (Carter Decl. Ex. 7). Lindahl commented that plaintiff had

failed to copy a contact list into a computerized address book, had been unable to prepare form rejection letters from templates he had prepared for her and was unable to answer the telephone because she was consistently away from her desk (Carter Decl. Ex. 8).

Plaintiff's employment was terminated the following day, January 11, 2001 (Carter Decl. ¶ 7 & Ex. 1).

B.  Plaintiff's Claims and
    Defendant's Arguments

Plaintiff commenced this action using the form complaint provided by the Court's Pro Se Office and has checked the spaces indicating that she believes that, as a result of illegal discrimination directed at both her disability and her race, defendant terminated her employment, failed to accommodate her disability, subjected her to unequal terms and conditions of employment and retaliated against her.  Nowhere in the complaint does plaintiff elaborate on her claims of race-based discrimination or retaliation.

Defendant contends that it is entitled to summary judgment for a variety of reasons.  First, to the extent that plaintiff is asserting a claim under the New York State Human Rights Law, defendant argues that her claim is barred by the doctrine of election of remedies.  Second, defendant argues that plaintiff's ADA claim fails because the evidence does not

establish the existence of a genuine issue of fact as to whether
(1) plaintiff had a disability, (2) defendant had notice of any
disability, (3) defendant failed to accommodate plaintiff's
disability, and (4) plaintiff's disability played a role in
defendant's decision to terminate plaintiff's employment.
Finally, defendant claims that no reasonable fact finder could
conclude that either race-based discrimination or retaliation
played a role in the decision to terminate plaintiff's
employment.

III.  <u>Analysis</u>

    A.  <u>Summary Judgment Standard</u>

        The standards applicable to a motion for summary
judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no
> genuine issue of material fact and the moving party is
> entitled to judgment as a matter of law.  Fed.R.Civ.P.
> 56(c).  This form of relief is appropriate when, after
> discovery, the party -- here plaintiff -- against whom
> summary judgment is sought, has not shown that evidence
> of an essential element of her case -- one on which she
> has the burden of proof -- exists.  <u>See</u> <u>Celotex Corp.</u>
> <u>v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91
> L.Ed.2d 265 (1986).  This form of remedy is
> inappropriate when the issue to be resolved is both
> genuine and related to a disputed material fact.  An
> alleged factual dispute regarding immaterial or minor
> facts between the parties will not defeat an otherwise
> properly supported motion for summary judgment.  <u>See</u>
> <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir.
> 1990).  Moreover, the existence of a mere scintilla of
> evidence in support of nonmovant's position is
> insufficient to defeat the motion; there must be

> evidence on which a jury could reasonably find for the
> nonmovant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.
> 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
>
> If the movant demonstrates an absence of a genuine
> issue of material fact, a limited burden of production
> shifts to the nonmovant, who must "demonstrate more
> than some metaphysical doubt as to the material facts,"
> and come forward with "specific facts showing that
> there is a genuine issue for trial." <u>Aslanidis v.
> United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir.
> 1993). If the nonmovant fails to meet this burden,
> summary judgment will be granted against it.

<u>Powell v. Nat'l Bd. of Med. Exam'rs</u>, 364 F.3d 79, 84 (2d Cir.

2004); <u>accord</u> <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 553-54

(2d Cir. 2005); <u>Gallo v. Prudential Residential Servs., Ltd.</u>, 22

F.3d 1219, 1223-24 (2d Cir. 1994). "The party seeking summary

judgment has the burden to demonstrate that no genuine issue of

material fact exists . . . . In determining whether a genuine

issue of material fact exists, a court must examine the evidence

in the light most favorable to, and draw all inferences in favor

of, the non-movant . . . . Stated more succinctly, '[t]he

evidence of the non-movant is to be believed.'" <u>Lucente v. Int'l

Bus. Machs. Corp.</u>, 310 F.3d 243, 253-54 (2d Cir. 2002) (citations

omitted). <u>See</u> <u>also</u> <u>Jeffreys v. City of New York</u>, <u>supra</u>, 426 F.3d

at 553 ("Assessments of credibility and choices between

conflicting versions of the events are matters for the jury, not

for the court on summary judgment."); <u>accord</u> <u>Make the Road by

Walking, Inc. v. Turner</u>, 378 F.3d 133, 142 (2d Cir. 2004); <u>Dallas

Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

Summary judgment is "ordinarily inappropriate" in employment discrimination cases where the employer's intent and state of mind are in dispute. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000); Cifarelli v. Vill. of Babylon, 93 F.3d 47, 54 (2d Cir. 1996); see Gallo v. Prudential Residential Servs., supra, 22 F.3d at 1224; Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir. 1989); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Moreover, in discrimination cases

> summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error.

Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted). See Weber v. Parfums Givenchy, Inc., 49 F. Supp.2d 343, 354 (S.D.N.Y. 1999).

Although the central role of intent requires that caution be exercised in addressing a summary judgment motion made in a discrimination case, "'the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to . . . other areas of litigation.'" Abdu-Brisson v. Delta Air Lines, Inc.,

12

239 F.3d 456, 466 (2d Cir. 2001), quoting Meiri v. Dacon, supra, 759 F.2d at 998.  Thus, the Court of Appeals for the Second Circuit has expressly "remind[ed the] district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), quoting McLee v. Chrysler Corp., 38 F.3d 67, 68 (2d Cir. 1994).

      B.  Plaintiff's Claim
          Under the New York
          State Human Rights Law

      Defendant first argues that, to the extent plaintiff is asserting a claim under New York State's Human Rights Law, her claim is barred by the doctrine of election of remedies.

      New York State's Human Rights Law, which is codified at Section 296(1) of New York's Executive Law, encompasses the protection granted employees under Title VII and the ADA and prohibits employment discrimination on the bases of "age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual . . . ."  See generally Treglia v. Town of Manlius, 313 F.3d 713, 723-24 (2d Cir. 2002) (Section 296 affords protection broader than that afforded by the ADA); Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir.

2001) (same standards that apply to Title VII claims apply to claims asserted under Section 296).

A threshold issue is whether the complaint asserts a claim under New York's Human Rights Law. Plaintiff's papers in opposition to defendant's motion do not address the issue.

Plaintiff commenced this action using the form complaint provided by the Court's Pro Se office. In large part, the complaint consists of preprinted paragraphs with spaces for a plaintiff to check if she contends that the paragraph is applicable to her case (see Young Decl. Ex. 1). The three statutory bases of liability offered to a plaintiff on the form are Title VII, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, and the ADA. New York's Human Rights Law is not offered as an option.[1]

Notwithstanding the fact that the form complaint utilized in this District does not expressly permit the assertion of a claim under New York's Human Rights Law, the Court of

_____

[1]The only reference to state law in the preprinted form complaint is contained in the preprinted paragraph addressing jurisdiction:

> Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law.

(Young Decl. Ex. 1 (Complaint) at 2).

Appeals has recently concluded that it should be construed, at least under some circumstances, to assert such a claim.  Batac v. Pavarini Constr. Co., 216 Fed. Appx. 58, 61 (2d Cir. 2007).[2] Accordingly, I shall deem plaintiff to assert a claim under the Human Rights Executive Law.

Nevertheless, defendant is correct that plaintiff's prior assertion of her Human Rights Law claim before the NYSDHR precludes the assertion of the claim here.

Section 297(9) of the New York Executive Law provides:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person had filed a complaint hereunder or with any local commission on human rights, . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

Plaintiff here filed a claim with the NYSDHR on February 1, 2001 (Young Decl. Ex. 1 (Complaint) at 4; Ex. 14).

---

[2]In Batac, one of the factors the Court of Appeals relied upon was the fact that plaintiff had annexed to the form complaint a copy of the complaint he had filed with the New York State Division of Human Rights ("NYSDHR") which asserted a claim under the Human Rights Law.  216 Fed. Appx. at 61.  Although plaintiff here has not annexed her administrative filing to her complaint, it is defendant who seeks to have the complaint construed to assert a claim under the Human Rights Law.  Given the fact that it is defendant who seeks to have the complaint broadly construed, there is no reason to distinguish Batac on this ground.

The NYSDHR dismissed that claim on the merits on September 15, 2003, with the finding by the NYSDHR that

> The evidence gathered during the course of the investigation of the instant complaint is not sufficient to support the complainant's allegations of unlawful discrimination. The record shows that prior to the complainant's fall of October 3, 2000, the complainant had a history of poor time and attendance. The record fails to support the respondent requesting medical documentation for the complainant's absence was a form of harassment.
>
> The respondent states and the record supports that undocumented absenteeism led to the termination of the complainant's employment. The Administrative Assistants within the complainant's department consisted of two Blacks, including the complainant, one White, and one Hispanic. Although the complainant alleges that the termination of her employment was based on race, the record shows that the complainant was the only Administrative Assistant in her department with a significant time and attendance issue.
>
> The respondent has advanced a non-discriminatory, business related reason for the action taken against the complainant. This reason is not found to be a pretext to discriminate against the complainant.

(Young Decl. Ex. 16 at 1-2).

Where, as here, "a plaintiff elects to pursue claims of discrimination through administrative proceedings before the NYSDHR, § 297(9) poses an 'insuperable jurisdictional bar' to subsequently raising those same claims of discrimination in court." <u>Smith-Henze v. Edwin Gould Servs. for Children & Families</u>, 06 Civ. 3049 (LBS)(DEF), 2006 WL 3771092 at *3 (S.D.N.Y. Dec. 21, 2006), <u>quoting</u> <u>Moodie v. Fed. Reserve Bank of New York</u>, 58 F.3d 879, 882-84 (2d Cir. 1995); <u>accord</u> <u>Solomon-</u>

Lufti v. New York City Dep't of Educ., 05 Civ. 7260(GBD), 2006 WL 2664218 at *4 (S.D.N.Y. Sept. 13, 2006) ("Plaintiff, having brought this claim before the NYSDHR prior to this action, is now barred from seeking relief on the claim in this court by Section 297(9) of the New York State Executive Law . . . ."); Lennon v. New York City, 392 F. Supp.2d 630, 640-41 (S.D.N.Y. 2005) ("[A] person claiming to be aggrieved by an unlawful discriminatory practice may seek relief either from a court of appropriate jurisdiction or from the [New York State Division of Human Rights] or any local commission on human rights, but not both." (alteration in original; internal quotation marks omitted)); Hernandez v. New York City Law Dep't Corp. Counsel, 94 Civ. 9042 (SS)(AJP), 1997 WL 27047 at *10 (S.D.N.Y. Jan. 23, 1997) (the NYSHRL "provide[s] an election of forums, either administrative or judicial, such that a plaintiff who files a complaint with the State . . . Human Rights Division[] may not then bring suit in court").

Thus, plaintiff's assertion of her Human Rights Law claim before the NYSDHR precludes the assertion of the same claim here and the claim is, therefore, dismissed.

### C. Plaintiff's ADA, Title VII and Retaliation Claims

Discrimination claims brought pursuant to the ADA and Title VII and retaliation claims brought pursuant to the ADA and

Title VII are all analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003) (Title VII retaliation claims); Reg'l Econ. Cmty. Action Prog., Inc. v. City of Middletown, 294 F.3d 35, 48-49, 54 (2d Cir. 2002) (ADA and ADA retaliation claims); Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000) (Title VII claim); Johns v. Home Depot U.S.A., Inc., 03 Civ. 4522 (DC), 2005 WL 545210 at *4 (S.D.N.Y. Mar. 8, 2005) (Title VII claim).  "In McDonnell Douglas Corp. v. Green . . . the Supreme Court established an 'allocation of the burden of production and an order for the presentation of proof in Title VII' [and ADA] cases."  Fisher v. Vassar Coll., 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc), quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); see also Bickerstaff v. Vassar Coll., 196 F.3d 435, 447 (2d Cir. 1999); Jean-Gilles v. County of Rockland, 195 F. Supp.2d 528, 531 (S.D.N.Y. 2002).  "Following the Supreme Court's directive, plaintiff must initially come forward with facts sufficient to establish a prima facie case that [she suffered an adverse employment action] under circumstances giving rise to an inference of discrimination."  Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998); see Weiss v. City of New York, 96 Civ. 8281 (LTS)(MHD), 2003 WL 1621403 at *2 (S.D.N.Y. Mar. 28, 2003).

"The burden of establishing a _prima_ _facie_ case is not a heavy one.  One might characterize it as minimal."  <u>Carlton v. Mystic Transp. Inc.</u>, _supra_, 202 F.3d at 134.  <u>See</u> <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 77 (2d Cir. 2001); <u>Galabya v. New York City Bd. of Educ.</u>, 202 F.3d 636, 639 (2d Cir. 2000); <u>Scaria v. Rubin</u>, 117 F.3d 652, 654 (2d Cir. 1997) (<u>per</u> <u>curiam</u>); <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994) (describing the burden of production as <u>de</u> <u>minimis</u>); <u>Bogart v. New York City Health & Hosps. Corp.</u>, 98 Civ. 6118 (TPG), 2001 WL 504874 at *5 (S.D.N.Y. May 11, 2001).

If a plaintiff succeeds in establishing a <u>prima</u> <u>facie</u> case, a presumption is created "that the employer discriminated against the employee in an unlawful manner," <u>Greenway v. Buffalo Hilton Hotel</u>, <u>supra</u>, 143 F.3d at 52, and the burden then shifts to the employer to rebut the presumption by articulating a legitimate, nondiscriminatory reason for its actions.  <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 216 (2d Cir. 2005); <u>Farias v. Instructional Sys., Inc.</u>, 259 F.3d 91, 98 (2d Cir. 2001); <u>Carlton v. Mystic Transp., Inc.</u>, <u>supra</u>, 202 F.3d at 134; <u>Bickerstaff v. Vassar Coll.</u>, <u>supra</u>, 196 F.3d at 446; <u>Gallo v. Prudential Residential Servs.</u>, <u>supra</u>, 22 F.3d at 1224.

> The defendant's burden of production also is not a
> demanding one; [it] need only offer such an explanation
> for the employment decision.  Although the burden of
> production shifts to the defendant, the ultimate burden
> of persuasion remains always with the plaintiff.

Bickerstaff v. Vassar Coll., supra, 196 F.3d at 446 (citations omitted).

If the employer articulates a non-discriminatory reason for the termination, the presumption of discrimination raised by the prima facie case "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, supra, 509 U.S. at 510-11; see Carlton v. Mystic Transp., Inc., supra, 202 F.3d at 134-35; Green v. Harris Publ'ns, Inc., 331 F. Supp.2d 180, 187 (S.D.N.Y. 2004). At this point, the burden shifts back to the plaintiff to offer proof that would allow a rational fact finder to conclude that the employer's proffered reason for the termination was pretextual. St. Mary's Honor Ctr. v. Hicks, supra, 509 U.S. at 507-08; Carlton v. Mystic Transp., Inc., supra, 202 F.3d at 135. Although the presumption of discrimination "drops out of the picture" once the defendant meets its burden of production, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual . . . ." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (internal quotation marks omitted); Dawson v. Bumble & Bumble, supra, 398 F.3d at 216. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer

20

unlawfully discriminated."  <u>Reeves v. Sanderson Plumbing Prods.,</u> <u>Inc.</u>, <u>supra</u>, 530 U.S. at 148.

In <u>Schnabel v. Abramson</u>, 232 F.3d 83, 90 (2d Cir. 2000), the Second Circuit explained the impact of the Supreme Court's decision in <u>Reeves</u> as follows:

> In examining the impact of <u>Reeves</u> on our precedents, we conclude that <u>Reeves</u> prevents courts from imposing a <u>per</u> <u>se</u> rule requiring <u>in</u> <u>all</u> <u>instances</u> that [a claimant] offer more than a <u>prima</u> <u>facie</u> case and evidence of pretext . . . .  But the converse is not true:  following <u>Reeves</u>, we decline to hold that <u>no</u> [] defendant may succeed on a summary judgment motion so long as the plaintiff has established a <u>prima</u> <u>facie</u> case and presented evidence of pretext.  Rather, we hold that the Supreme Court's decision in <u>Reeves</u> clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." <u>Reeves</u>, 530 U.S. at ---, 120 S.Ct. at 2106 (internal quotation marks omitted).

<u>See</u> <u>also</u> <u>Hill v. Citibank Corp.</u>, 312 F. Supp.2d 464, 478 (S.D.N.Y. 2004).

Furthermore, in <u>James v. New York Racing Ass'n</u>, 233 F.3d 149, 155 (2d Cir. 2000), the Second Circuit explained that proof that the employer's non-discriminatory explanation is false does not inevitably establish illegal discrimination:

> We reasoned in <u>Fisher</u> that "evidence constituting a <u>prima</u> <u>facie</u> case prior to the employer's proffer of a reason, coupled with the error or falsity of the employer's proffered reason may -- or may not -- be sufficient to show illegal discrimination."  <u>Fisher</u>, 114 F.3d at 1333.  In nearly identical terms the Supreme Court explained in <u>Reeves</u> that in some circumstances, a <u>prima</u> <u>facie</u> case plus falsity of the

employer's explanation can, without more, be enough to support a reasonable finding that prohibited discrimination has occurred . . . .

233 F.3d at 155.

1.  Plaintiff's
    ADA Claim

"In order to make out a prima facie case of discriminatory discharge under the ADA, a plaintiff must show that (1) [her] employer is subject to the ADA; (2) [she] suffers from a disability within the meaning of the ADA; (3) [she] could perform the essential functions of his job with or without reasonable accommodation; and (4) [she] was fired because of [her] disability." Reeves v. Johnson Controls World Servs., 140 F.3d 144, 149-50 (2d Cir. 1998). It also appears that notice to the employer of the claimed disability is an essential element of a wrongful termination case under the ADA. Raytheon v. Hernandez, 540 U.S. 44, 55 n.7 (2003) (adverse employment action cannot be the product of discrimination on the basis of a disability if employer unaware of the disability); accord Woodman v. WWOR-TV, Inc., 411 F.3d 69, 81 (2d Cir. 2005); see Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 932 (7th Cir. 1995) (holding "that an employer cannot be held liable under the ADA for firing an employee when it indisputably had no knowledge of the disability").

In order to establish a prima facie case under the ADA based upon an employer's failure to accommodate a disability, a plaintiff must show: "(1) that [she] is an individual who has a disability within the meaning of the statute, (2) that an

23

employer covered by the statute had notice of his disability, (3) that with reasonable accommodation, [she] could perform the essential functions of the position sought, and (4) that the employer has refused to make such accommodations." Stone v. City of Mount Vernon, 118 F.3d 92, 96-97 (2d Cir. 1997); accord Grave v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006); Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 216 (2d Cir. 2001); Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 (2d Cir. 2000); Fol v. City of New York, 01 Civ. 1115 (THK), 2003 WL 21556938 at *5 (S.D.N.Y. July 9, 2003).

### a. Existence of a Disability

In order to survive defendant's summary judgment motion addressing plaintiff's claims of wrongful discharge and failure to accommodate, plaintiff must, among other things, offer evidence sufficient to create an issue of fact that she actually has a disability within the meaning of the ADA. See West v. Port Auth. of New York & New Jersey, 00 Civ. 6711 (HB), 2002 WL 31027016 at *2-*3 (S.D.N.Y. Aug. 30, 2002).

The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."

42 U.S.C. § 12102(2).  The Supreme Court has held that "[m]erely

having an impairment does not make one disabled for purposes of

the ADA.  Claimants also need to demonstrate that the impairment

limits a major life activity."  <u>Toyota Motor Mfg., Kentucky, Inc.</u>

<u>v. Williams</u>, 534 U.S. 184, 195 (2002).  According to the

applicable regulations, examples of "major life activities"

include "caring for oneself, performing manual tasks, walking,

seeing, hearing, speaking, breathing, learning, and working."  29

C.F.R. § 1630.2(i).  An impairment can be said to "substantially

limit" one of the enumerated major life activities if the

plaintiff is:

> (i)  Unable to perform a major life activity that the
> average person in the general population can perform;
> or
>
> (ii) Significantly restricted as to the condition,
> manner or duration under which an individual can
> perform a particular major life activity as compared to
> the condition, manner, or duration under which the
> average person in the general population can perform
> that same major life activity.

29 C.F.R. § 1630.2(j)(1)(i)-(ii).  The factors to be considered

in making this determination include:  "(i) The nature and

severity of the impairment; (ii) The duration or expected

duration of the impairment; and (iii) The permanent or long term

impact, or the expected permanent or long term impact of or

resulting from the impairment."  29 C.F.R. § 1630.2(j)(2)(i)-

(iii).  "[C]ourts have been careful to distinguish impairments

which merely <u>affect</u> major life activities from those that

substantially limit those activities." Ryan v. Grae & Rybicki,
P.C., 135 F.3d 867, 870 (2d Cir. 1998) (emphasis in original).

Defendant first claims that plaintiff did not have a
disability within the meaning of the ADA.

Plaintiff's ADA claim is predicated on the injuries to
her back, knee and neck she claims to have suffered during her
October 3, 2000 fall (Young Decl. Ex. 1 (Complaint) at 3). At
her deposition, plaintiff testified that as a result of these
injuries, she was advised to "avoid extensive use of stairs and
extensive walking" (Young Decl. Ex. 2 at 71). The evidence in
the record contains no further information concerning plaintiff's
injuries while she was employed by defendant.[3]

To the extent plaintiff is relying on the limitation of
her ability to climb stairs, climbing stairs is not a major life
activity. Kelly v. Drexel Univ., 94 F.3d 102, 106-108 (3d Cir.
1996) (a plaintiff who could not walk long distances and had
trouble climbing stairs was not substantially limited in a major
life activity); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d
755, 758 n.2 (5th Cir. 1996) ("Climbing is not such a basic,
necessary function and this court does not consider it to qualify

_____

[3]Although plaintiff has submitted evidence that she
underwent surgery on her knee approximately one year after her
employment with defendant ended, that evidence is irrelevant
since it relates to a period of time long after plaintiff's
employment ended and no evidence is offered connecting it to
plaintiff's condition during the time she was employed by
defendant.

as a major life activity under the ADA."); <u>Hayest v. Cleveland</u>
<u>Clinic Found.</u>, 06 Civ. 0020 (DAP), 2006 WL 2993415 at *8 n.40
(N.D. Ohio Oct. 19, 2006); <u>Piascyk v. City of New Haven</u>, 64 F.
Supp.2d 19, 26 (D. Conn. 1999) ("The court . . . concludes that
climbing stairs and ladders . . . are not major life activities
within the meaning of the ADA.").

        In addition, even if I assume that climbing stairs is a
"major life activity," plaintiff has not offered any evidence
that the her injuries resulted in a substantial limitation of
that activity.  Reading plaintiff's testimony in the light most
favorable to her, as a result of her injury, she was directed not
to climb stairs extensively, <u>i.e.</u>, she should not climb stairs
for a prolonged period of time or she should not climb stairs
frequently.  However, in order to establish a substantial
limitation on her ability to climb stairs, plaintiff must offer
evidence sufficient to support a finding that she was
significantly more restricted in her ability to climb stairs than
the average person in the general population.  <u>See</u> 29 C.F.R. §
1630.2(j)(1)(ii).  The limitation plaintiff claims is inherently
insubstantial because a physician's instruction to avoid
"extensive" use of the stairs is indistinguishable from an
instruction to limit one's use of stairs to that of an average
person.  In any event, the vague description of the limitation
that plaintiff provides here is too nebulous to support a finding

that it constitutes a substantial limitation.  See generally
Schluter v. Indus. Coils, Inc., 928 F. Supp. 1437, 1446 (W.D.
Wis. 1996).

Plaintiff's claimed limitation on her ability to walk
fairs no better.  Although walking is a "major life activity," 29
C.F.R. § 1630.2(i), defendant correctly notes that "Courts have
placed the bar relatively high when determining when the activity
of walking has been substantially limited."  Potenza v. New York
Dep't of Transp., 00 Civ. 707 (SHS), 2001 WL 1267172 at *10
(S.D.N.Y. Oct. 22, 2001), aff'd, 95 Fed. Appx. 390 (2d Cir.
2004).

> Courts in this district have repeatedly held that the
> need to walk slowly and the inability to walk long
> distances or for long periods of time -- much less than
> the plaintiff can walk -- do not constitute substantial
> limits on walking.  See, e.g., Mitchell v. Girl Scouts
> of the U.S.A., No. 98 Civ. 3730, 2003 WL 22705121, at
> *6 (S.D.N.Y. Nov. 17, 2003) (finding that inability to
> do a "substantial amount of walking . . . while of
> course to an extent is limiting, does not rise to the
> level of a substantial limitation"); Rosa v. Brink's,
> Inc., 103 F. Supp.2d 287, 290 (S.D.N.Y. 2000) (finding
> inability to walk for long period of time does not
> amount to substantial limitation); Butterfield v. New
> York State, No. 96 Civ. 5144, 1998 WL 401533, at *9
> (S.D.N.Y. July 15, 1998) (finding plaintiff's trouble
> taking extended walks "simply does not, as a matter of
> law, constitute a sufficiently substantial limitation
> to allow his case to go to the jury on this point");
> Hazeldine v. Beverage Media, Ltd., 954 F. Supp. 697,
> 703-04 (S.D.N.Y. 1997) (finding plaintiff's inability
> to walk more than five city blocks without resting did
> not support conclusion that her weight substantially
> limited major life activity).  Courts in other Circuits
> have reached similar conclusions.  See, e.g., Kelly v.
> Drexel Univ., 94 F.3d 102, 106 (3d Cir. 1996)
> (affirming district court's holding that plaintiff's

> inability to walk more than one mile, inability to jog,
> and need to move slowly and hold handrail when climbing
> stairs did not, as a matter of law, substantially limit
> his ability to walk); Graver v. Nat'l Eng'g Co., No.
> 94-C-1228, 1995 WL 443944, at *10-11 (N.D. Ill. July
> 25, 1995) (finding plaintiff's limp and pain while
> walking did not constitute disability); Stone v.
> Entergy Servs., Inc., No. 94-2669, 1995 WL 368473, at
> *4 (E.D. La. June 20, 1995) (finding plaintiff's
> inability to walk briskly or climb stairs not
> substantial limitation on major life activity).

Garvin v. Potter, 367 F. Supp.2d 548, 562 (S.D.N.Y. 2005).    In

Garvin, the Honorable John G. Koeltl, United States District

Judge, concluded that plaintiff's inability to walk quickly or to

walk more than eight hours per day was insufficient to give rise

to a question of fact as to the existence of a disability.

A number of other cases confirm that a plaintiff must

meet a demanding standard to establish a claim of disability

based on difficulties walking.  For example, in Passanisi v.

Berkley Adm'rs of Conn., Inc., 3:06cv313 (PCD), 2007 WL 841946

(D. Conn. Mar. 19, 2007), plaintiff had been diagnosed with

multiple sclerosis ("MS") and testified that she was unable to

walk quickly, could not run, skip, hop or jump, had balance

problems, had difficulty climbing stairs and suffered from

constant numbness or tingling in her hands and feet.  She did

not, however, use a cane or any other appliance; she also

testified that she never missed a day of work due to her MS and

that the MS "'never really bothered [her].'"  2007 WL 841946 at

*4. The Court granted summary judgment dismissing plaintiff's ADA claim, stating

> Plaintiff alleges that she cannot walk quickly, run, skip, hop or jump. Plaintiff also testified that her "balance is off," that she has difficulty climbing stairs and that she has "constant numbness" or tingling feeling in her hands and feet. She alleges in her opposition brief that her condition is getting worse with age, however, she offers no evidence in support of this assertion. Courts have held that moderate restrictions on the ability to walk do not amount to a substantial limitation. See McCoy v. USF Dugan, Inc., 42 Fed. Appx. 295, 297 (10th Cir. 2002) (a plaintiff with MS who "could no longer bowl, dance, play tennis, or ride a bicycle," had problems with balance, "would [at times] have to hold on to the wall when walking," and "had fallen at various times" was not substantially limited); Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1025 (5th Cir. 1999) (limping, "moving at a significantly slower pace than the average person," and difficulty walking in extreme cold do not constitute a substantial impairment); Penny v. United Parcel Serv., 128 F.3d 408, 415 (6th Cir. 1997) ("moderate difficulty or pain experienced while walking does not rise to the level of a disability"); Kelly v. Drexel Univ., 94 F.3d 102, 106 (3d Cir. 1996) (inability to walk "more than a mile or so" or to jog, and the need to go slowly up stairs does not constitute substantial limitation in walking); see also 29 C.F.R. Pt. 1630, App. § 1630.2(j) (walking is substantially limited if individual "can only walk for very brief periods of time").

2007 WL 841946 at *7.

Additional authorities reaching similar results include Mitchell v. Girl Scouts of the U.S.A., 98 Civ. 3730 (GBD), 2003 WL 22705121 at *6 (S.D.N.Y. Nov. 17, 2003) (stroke victim who had weakness on her right side, walked with a limp and used a cane "most of the time" not substantially limited in walking; inability to do "a substantial amount of walking . . . , while of

30

course to an extent is limiting, does not rise to the level of a substantial limitation."); Rosa v. Brink's Inc., 103 F. Supp.2d 287, 290 (S.D.N.Y. 2000) (plaintiff's inability "to clean her house 'properly,' walk or sit or stand for long periods without some undefined pain, or engage in sports such as biking, scuba diving, camping, hiking, and riding horses" did not constitute substantial limitation); Piascyk v. City of New Haven, supra, 64 F. Supp.2d at 27-28 (plaintiff's walking was not substantially limited despite plaintiff's 20% impairment of right ankle, 10% impairment of back, marked limp, periodic use of air cast, occasional intense pain in right ankle and inability to walk more than one-half mile); Butterfield v. New York State, 96 Civ. 5144 (BDP)(LMS), 1998 WL 401533 at *9 (S.D.N.Y. July 15, 1998) ("The fact that [plaintiff, due to obesity,] 'periodically' has had trouble breathing, or has had trouble running, taking 'extended' walks, or lifting 'great' amounts of weight, simply does not, as a matter of law, constitute a sufficiently substantial limitation to allow his case to go to the jury on this point."); Nedder v. Rivier Coll., 944 F. Supp. 111, 116-17 (D.N.H. 1996) (plaintiff's walking not substantially limited where she could walk 500 yards slowly, unstably and with difficulty). Cf. Chasse v. Computer Scis. Corp., 453 F. Supp.2d 505, 516-17 (D. Conn. 2006) (plaintiff substantially limited where, as a result of diabetes, fractured ankle and other conditions, she could not stand or walk

for periods longer than thirty minutes without taking a fifteen minute break).

The only evidence in the record concerning a limitation on plaintiff's walking is her deposition testimony that she was advised to avoid "extensive" walking (Young Decl. Ex. 2 at 71). There is no evidence in the record defining what plaintiff meant by extensive walking. However, the authorities cited above teach that a claim of disability predicated on a limitation on walking must be supported by evidence that the limitation is substantial. Plaintiff's vague claim that she was to avoid "extensive" walking is simply too vague and general to meet this standard. The Court of Appeals "ha[s] often held that mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment." Engl v. Aetna Life Ins. Co., 139 F.2d 469, 473(2d Cir. 1943). See also Sanchez v. Pereira, 343 F. Supp.2d 65, 73 (D.P.R. 2004); Tucker v. Banknorth, NA, 333 F. Supp.2d 50, 55-56 (E.D.N.Y. 2004); Alcman Services Corp. v. Samuel H. Bullock, P.C., 925 F. Supp. 252, 256 (D.N.J. 1996) ("A non-moving party may not rest upon mere allegations, general denials, or vague statements in opposition to a summary judgment motion. If the non-moving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted."), aff'd without opinion, 124 F.3d 185 (3rd Cir. 1997).

Thus, plaintiff has failed to offer evidence sufficient to establish the existence of an issue of fact that she suffered from a disability within the meaning of the ADA.

> b.   Defendant's Notice of
> the Claimed Disability

Defendant next contends that even if plaintiff suffered from a disability within the meaning of the ADA, there can be no liability because there is no evidence that defendant had notice of the disability.

Although there may be close cases where knowledge of some symptoms may give rise to a question of fact concerning the employer's knowledge of the claimed disability, see Hogarth v. Thornburgh, 833 F. Supp. 1077, 1084-85 (S.D.N.Y. 1993), this is not one of them.  All the evidence in the record discloses is that plaintiff fell down a flight of stairs at work in October 2000 and injured her knee.  She came to work the day after her fall; there is no evidence that she broke any bones, no evidence that she required any surgery prior to the termination of her employment and no evidence that prior to the termination of her employment she needed a cane, a walker or other similar appliance.  Her injury did not prevent her from bowling with her co-workers shortly after the accident (Young Decl. Ex. 5 at 43), nor did it prevent her from dancing at the defendant's holiday party (Young Decl. Ex. 15 at 4).  Thus, defendant had no reason

to know or even suspect that defendant suffered an impairment that was so serious that it rose to the level of a disability within the meaning of the ADA, notwithstanding defendant's knowledge of plaintiff's injury. See Crandall v. Paralyzed Veterans of Am., 146 F.3d 894, 898 (D.C. Cir. 1998) (plaintiff's chronic rudeness insufficient to give notice that plaintiff suffered from bipolar disorder); Grunberg v. Quest Diagnostics, Inc., 3:05-CV-1201 (VLB), 2008 WL 323940 at *5 (D. Conn. Feb. 5, 2008) (plaintiff's appearing "stressed" insufficient to put defendant on notice that she suffered from depression); Santiago v. New York City Police Dep't, 05 Civ. 3035 (PAC)(MHD), 2007 WL 4382752 at *19-*20 (S.D.N.Y. Dec. 14, 2007) (aberrant behavior accompanying major stressors insufficient to put defendant on notice that plaintiff was suffering from depression); Bresloff-Hernandez v. Horn, 05 Civ. 384 (JGK), 2007 WL 2789500 at *9-*10 (S.D.N.Y. Sept. 25, 2007) (knowledge of injuries sustained in on-the-job bus accident and subsequent back surgery insufficient to put defendant on notice that plaintiff suffered from disability); Brown v. The Pension Bds., 488 F. Supp.2d 395, 406 (S.D.N.Y. 2007) ("Brown's mother's comment that Plaintiff was in a 'breakdown condition,' without any reference to hospitalization or any medical attention he was receiving, did not put Boards on notice that Brown had a diagnosed mental condition constituting a disability.").

The most defendant is chargeable with is knowledge that plaintiff suffered relatively mild injuries as a result of her fall with no suggestion of permanence.  Such knowledge does not constitute knowledge of a disability because the injury does not rise to the level of a disability.

> "Courts within this circuit, and the vast majority of courts elsewhere which have considered the question, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary disabilities are not disabled persons within the meaning of the act."  Murray v. Bokman, Inc., No. 99-CV-0051, 2001 WL 6036898, at *5 (W.D.N.Y. May 24, 2001), quoting Graaf v. North Shore Univ. Hosp., 1 F. Supp.2d 318, 321 (S.D.N.Y. 1998); Huskins v. Pepsi Cola of Odgensburg Bottlers, 180 F. Supp.2d 347, 351-52 (N.D.N.Y. 2001) (collecting cases); see Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (impact of impairment must be permanent or long term); see also Halperin v. Abacus Tech. Corp., 128 F.3d 191, 199 (4th Cir. 1997) ("Extending the statutory protections available under the ADA to individuals with broken bones, sprained joints, sore muscles, infectious diseases, or other ailments that temporarily limit an individual's ability to work would trivialize" the ADA's objective).

Hamilton v. Niagara Frontier Transp. Auth., 00-CV-300SR, 00-CV-863SR, 2007 WL 2241794 at *12 (W.D.N.Y. July 31, 2007).

Thus, plaintiff's ADA claim also fails because there is no evidence in the record to give rise to an issue of fact as to whether defendant had notice of plaintiff's claimed disability.

c.  Summary

Because there is no evidence to give rise to a genuine issue of fact as to two essential elements of plaintiff's ADA

claim, namely the existence of a disability and defendant's notice of it, defendant is entitled to summary judgment dismissing the ADA claim.[4]

### 2. Plaintiff's Title VII Claim

Plaintiff's Title VII claim is even more tenuous than her ADA claim.

A *prima facie* case under Title VII has four elements: (1) plaintiff is a member of a protected class (2) plaintiff was qualified for the position; (3) plaintiff was subject to an adverse employment action and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination on the basis of plaintiff's membership in a protected class. Dawson v. Bumble & Bumble, supra, 398 F.3d at 216; Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002); Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 316 (2d Cir. 1999); Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999); Hills v. City of New York, 03 Civ. 4265 (WHP), 2005 WL 591130 at *3 (S.D.N.Y. Mar. 15, 2005); Beckmann v. Darden, 351 F. Supp.2d 139, 146 (S.D.N.Y. 2004); Williams v. Salvation Army, 108 F. Supp.2d 303, 308 (S.D.N.Y.

---

[4]Although defendant asserts other deficiencies with respect to plaintiff's ADA claims, I find that it is unnecessary to reach these other arguments.

2000), citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

Even if I make the extremely generous assumption that plaintiff can establish a prima facie case, defendant has offered documented, non-discriminatory reasons for plaintiff's termination, namely her excessive absence, tardiness and poor job performance (Carter Decl. ¶¶ 3-7 and Exs. 1, 7 & 8 thereto). Thus, under the McDonnell Douglas analysis, plaintiff must now come forward with evidence that gives rise to a genuine issue of fact that race-based discrimination was at least one of the reasons for the termination of plaintiff's employment.

The closest plaintiff comes to meeting her burden is her argument that she was disciplined more harshly for attendance and punctuality issues than non African-American employees (Young Decl. Ex. 2 at 76-78).

Where a plaintiff is relying on differences in treatment to establish an inference of discrimination, the plaintiff bears the burden of demonstrating that a putative comparator is similarly situated in all material respects. Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) ("When considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment, we have said that the plaintiff must show she was 'similarly situated in all material respects' to the individuals

with whom she seeks to compare herself."); accord Bennett v.
Verizon Wireless, 04-CV-6314 (CJS), 2008 WL 216073 at *2
(W.D.N.Y. Jan. 24, 2008); Weiss v. JP Morgan Chase & Co., 06 Civ.
4402 (DLC), 2008 WL 216619 at *14 (S.D.N.Y. Jan. 22, 2008); White
v. Home Depot, Inc., 04-CV-401, 2008 WL 189865 at *6 (E.D.N.Y.
Jan. 17, 2008); Augustin v. Yale Club of New York City, 03 Civ.
1924 (KMK), 2006 WL 2690289 at *25 (S.D.N.Y. Sept. 15, 2006);
Conway v. Microsoft Corp., 414 F. Supp.2d 450, 459 (S.D.N.Y.
2006).  In addition, where, as here, the claim of disparate
treatment is based on inconsistent disciplinary practices, a
plaintiff is required "to show that similarly situated employees
who went undisciplined engaged in comparable conduct."  Graham v.
Long Island R.R., supra, 230 F.3d at 40; see Lucibello v. Yale-
New Haven Hosp., 3:03 CV 0814 (RNC), 2005 WL 578324 at *6 (D.
Conn. Mar. 10, 2005) ("In cases involving disparate treatment
with regard to discipline, the plaintiff must show that the
conduct of the other employee[s was] of comparable
seriousness.").  Vague references that plaintiff's treatment was
inferior to that afforded to unidentified comparators are
insufficient to withstand a motion for summary judgment.  Abato
v. New York City Off-Track Betting Corp., 03 Civ. 5849
(LTS)(HBP), 2007 WL 1659197 at *6 (S.D.N.Y. June 7, 2007);
Chandler v. AMR Am. Eagle Airline, 251 F. Supp.2d 1173, 1184
(E.D.N.Y. 2003); Allen v. St. Cabrini Nursing Home, Inc., 198 F.

Supp.2d 442, 450 (S.D.N.Y. April 11, 2002); <u>Marks v. Nat'l</u>
<u>Commc'ns Ass'n, Inc.</u>, 72 F. Supp.2d 322, 333-34 (S.D.N.Y. 1999);
see <u>Rookard v. Kateri Residence, Inc.</u>, 98 Civ. 8301 (BSJ), 2001
WL 180119 at *4 (S.D.N.Y. Feb. 22, 2001).

      Plaintiff has clearly failed to meet her burden. She
does not identify any comparators, nor does she offer any
evidence even suggesting that the comparators were absent or late
as frequently as plaintiff was. As the authorities cited in
foregoing paragraph demonstrate, such vague arguments,
unsupported by specific facts, will not defeat a properly
supported motion for summary judgment.[5]

---

[5]Plaintiff also appears to suggest that discrimination can
be inferred because she was the only African-American in her
department (Young Decl. Ex. 2 at 77). Whether or not this
contention is true (see Werbe Decl. ¶ 12), I find it is
insufficient at the third step of the <u>McDonnell Douglas</u> analysis.
Given the array of evidence in this case that plaintiff had
substantial performance and attendance problems and the absence
of evidence concerning the individuals who applied for employment
in plaintiff's department, the mere fact that she may have been
the only member of her protected class in her department does not
give rise to an issue of fact. See <u>Farrar v. Town of Stratford</u>,
3:05CV00105 (DJS), 2008 WL 731984 at *12 (D. Conn. Mar. 19,
2008); <u>Trotman v. CBS Radio Inc.</u>, 06 Civ. 3389 (FM), 2007 WL
2827803 at *10 (S.D.N.Y. Sept. 27, 2007); <u>Anderson v. Hertz</u>
<u>Corp.</u>, 507 F. Supp.2d 320, 327-28 (S.D.N.Y. 2007); <u>Davis v.</u>
<u>Oyster Bay-East</u>, No. 03-CV-1372 (SJF)(JO), 2006 WL 657038 at *10
(E.D.N.Y. Mar. 9, 2006) ("[T]he mere fact that Plaintiff was the
only African American stenographer, without more, is insufficient
to establish pretext"); <u>Washington v. Martinez</u>, No. Civ.A. 03-
3529, 2004 WL 632705 at *6 (E.D. Pa. Jan. 28, 2004) ("Although
plaintiff was the only African-American in the office she has
presented no evidence that she would have been treated
differently had she been a white person or that any of her
coworkers' actions were motivated by her race." ); <u>Branch v. Sony</u>
(continued...)

3.  Plaintiff's
    <u>Retaliation Claim</u>

To establish a <u>prima facie</u> case of retaliation under either the ADA or Title VII, and employee must demonstrate that: (1) she engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against her and (4) a causal connection exists between the protected activity and the adverse action, <u>i.e.</u>, that a retaliatory motive played a part in the adverse employment action.  <u>Sista v. CDC Ixis N. Am., Inc.</u>, 445 F.3d 161, 177 (2d Cir. 2006); <u>Constance v. Pepsi Bottling Co. of NY</u>, 03-CV-5009 (CBA)(MDG), 2007 WL 2460688 at *34 (E.D.N.Y. Aug. 24, 2007).

Although plaintiff checked the line on the form complaint indicating that she was asserting a retaliation claim, she nowhere specifies whether she is asserting retaliation under the ADA, Title VII or both.  In addition, she nowhere identifies the allegedly protected activity that gives rise to her retaliation claim.

---

[5](...continued)
<u>Music Entm't Inc.</u>, No. 97 Civ. 9238 (TPG), 2001 WL 228108 at *6 (S.D.N.Y. Mar. 8, 2001) ("[A] racial imbalance in the makeup of a workplace is insufficient, by itself, to demonstrate discrimination."); <u>Padob v. Entex Info. Serv.</u>, 960 F. Supp. 806, 813 (S.D.N.Y. 1997)("[T]he fact of [plaintiff's] being the only woman Corporate Sales Manager in her position, standing alone, does not create a genuine issue of material fact as to pretext based on gender.").

Plaintiff's retaliation claim, must be dismissed for substantially the same reason as her Title VII claim. Even if I assume that plaintiff has properly stated a <u>prima facie</u> case, she offers no evidence to controvert defendant's non-discriminatory reasons for terminating her employment. Thus, like her Title VII claim, plaintiff's retaliation claim necessarily fails at the third step of the <u>McDonnell Douglas</u> analysis.

### 4. Plaintiff's Opposition Papers

Although plaintiff has submitted papers in opposition to defendant's motion, her papers are technically deficient and her arguments are largely immaterial and do not address the issues raise by defendant.

First, plaintiff's opposition papers are neither sworn to under oath nor are they executed in accordance with the requirements of 28 U.S.C. § 1746. This deficiency, by itself, is sufficient to warrant disregarding plaintiff's opposition papers. <u>See</u> <u>Capobianco v. City of New York</u>, 422 F.3d 47, 55 (2d Cir. 2005); <u>Raskin v. Wyatt Co.</u>, 125 F.3d 55, 66 (2d Cir. 1997); <u>S. New Jersey Rail Group, LLC v. Lumbermens Mut. Cas. Co.</u>, 06 Civ. 4946 (LAK), 2007 WL 2609894 at *1 (S.D.N.Y. Sept. 5, 2007); <u>Hatzakos v. Acme Am. Refrigeration, Inc.</u>, 03-CV-5428 (DLI)(VVP), 2007 WL 2020182 at *5 n.2 (E.D.N.Y. July 6, 2007).

Second, plaintiff claims that she was initially assigned to work for a third supervisor -- Joseph Lapolla -- in addition to Susan Werbe and Nancy Dubuc. Even if true, this "fact" does not alter the nature of plaintiff's claimed injury or the lack of evidence of discriminatory or retaliatory animus.

Third, plaintiff claims she was improperly denied the opportunity to depose Abbe Raven and Charles Maday. In April, 2007, I granted defendant's application for a protective order precluding these depositions on the ground that defendant had demonstrated that Raven and Maday had no knowledge relevant to the claims or defenses in this action. Plaintiff's opposition to defendant's motion does not explain why that decision was erroneous.

Moreover, even if I consider plaintiff's papers as an attempt to assert an argument under Fed.R.Civ.P 56(f), the argument still fails. Fed.R.Civ.P. 56(f) permits a court to deny a motion for summary judgment on the ground that additional discovery is necessary. However, a party attempting to assert an argument under Rule 56(f) must meet a stringent test. First, an affidavit establishing the elements of a Rule 56(f) argument must be submitted; plaintiff's failure to submit such an affidavit is, by itself, a sufficient ground to reject an argument that additional discovery is necessary. Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 926 (2d Cir.

1985); <u>John Hancock Prop. & Cas. Ins. Co. v. Universale</u>
<u>Reinsurance Co.</u>, 147 F.R.D. 40, 47 n.15 (S.D.N.Y. 1993); <u>Coop.</u>
<u>Centrale Raiffeisen-Boerenleen Bank B.A. v. Nw. Nat'l Ins. Co.,</u>
778 F. Supp. 1274, 1280 n.9 (S.D.N.Y. 1991).

Moreover, even if I were to overlook plaintiff's
failure to submit an affidavit, her opposition papers are
substantively deficient:

> This Circuit has established a four-part test for the
> sufficiency of an affidavit submitted pursuant to Rule
> 56(f).  The affidavit must include the nature of the
> uncompleted discovery; how the facts sought are
> reasonably expected to create a genuine issue of
> material fact; what efforts the affiant has made to
> obtain those facts; and why those efforts were
> unsuccessful.  <u>Hudson River Sloop Clearwater, Inc. v.</u>
> <u>Department of Navy</u>, 891 F.2d 414, 422 (2d Cir. 1989);
> <u>Burlington</u>, 769 F.2d at 926.

<u>Paddington Partners v. Bouchard</u>, 34 F.3d 1132, 1138 (2d Cir.
1994); <u>accord</u> <u>Martinson v. Menifee</u>, 02 Civ. 9977 (LTS)(HBP), 2007
WL 2106516 at *6 (S.D.N.Y. July 18, 2007); <u>see</u> <u>Contemporary</u>
<u>Mission, Inc. v. U.S. States Postal Serv.</u>, 648 F.2d 97, 107 (2d
Cir. 1981) (A "bare assertion" that the evidence supporting a
plaintiff's allegation is in the hands of the defendant is
insufficient to justify a denial of a motion for summary judgment
under Rule 56(f).").

Plaintiff's opposition papers address none of these
elements and, most importantly, don't even suggest the nature of
the evidence she believes she could adduce from Raven and Maday.
Thus, plaintiff's papers are insufficient to justify the denial

of summary judgment on the theory that additional discovery is necessary.

Plaintiff also takes issue with a number of other factual matters raised in defendant's papers, such as the nature of plaintiff's duties, defendant's failure to submit affidavits from certain putative witnesses, whether there are any other African-American employees in plaintiff's department, who supervised plaintiff and who advised plaintiff that her employment had been terminated. Even if plaintiff's papers were sufficient to establish a genuine issue of fact with respect to each of these issues, defendant would still be entitled to summary judgment. None of these issues are relevant to the principal bases on which summary judgment is being granted, namely (1) plaintiff's election of remedies with respect to any state law claim, (2) the absence of evidence of a disability within the meaning of the ADA, (3) the absence of evidence of defendant's notice of the claimed disability, (4) the absence of evidence of the existence of racially discriminatory animus and (5) the absence of evidence of the existence of retaliatory animus.

Finally, while defendant's motion was pending, plaintiff wrote to my chambers on March 5, 2008 and claimed that there was "an alliance" between my Courtroom Deputy and counsel for defendant. As "evidence" of the alleged "alliance,"

plaintiff claims that my Deputy responded to calls from defendant's counsel faster than he responded to calls from plaintiff, that he would call defendant first when instituting a conference call and that he would send copies of letters and orders to defense counsel before he would send them to plaintiff. Plaintiff speculates that this "alliance" had its origin when one of the attorneys representing defendant served as a law clerk for one of the District Judges sitting in this District. Plaintiff's contentions are ludicrous on their face.

My deputy is not an attorney and does not discuss legal issues with any party in any case. His communications with counsel and pro se parties are strictly limited to scheduling and other logistical matters. Second, plaintiff could not know when calls from defendant's counsel were returned or when copies of letters or orders were received by defendant's counsel. Thus, plaintiff's claim that defendant receives preferential treatment is baseless on its face. Third, plaintiff's contention that the party's rights are affected by the sequence in which my Deputy institutes a conference call speaks for itself and does not warrant any comment. Plaintiff's final contention that the "alliance" arose when one of defendant's attorneys served as a law clerk is also ludicrous. As I noted above, my Deputy is not an attorney, and although he is an invaluable member of my staff, he plays no role whatsoever in the resolution of motions or

cases. In short, even if I were to make the outlandish and
unjustified assumption that my Deputy wanted to influence the
outcome of a motion or a case, he could not do so because he
plays no role in such matters.

In summary, the issues raised in plaintiff's papers are
not responsive to defendant's arguments and fail to address the
material issues in the case.

### 5. <u>Summary</u>

Defendant has established that there is no genuine
issue of fact concerning either the existence of a disability
within the meaning of the ADA or defendant's knowledge of such a
disability. In addition, even if I assume that there was
evidence in the record sufficient to sustain a <u>prima</u> <u>facie</u> case
of racial discrimination or retaliation, plaintiff has submitted
no evidence to rebut the non-discriminatory reasons proffered by
defendant for terminating plaintiff's employment. Thus, summary
judgment dismissing the case in its entirety is appropriate.

## IV. <u>Conclusion</u>

Accordingly, for all the foregoing reasons, defendant's
motion for summary judgment is granted in its entirety; the Clerk

of the Court is directed to enter judgment dismissing the com-

plaint.

Dated:   New York, New York
         March 26, 2008

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Ms. Naomi Watson
P.O. Box 7361
Princeton, New Jersey  08543-7361

Ms. Naomi Watson
P.O. Box 644
New York, New York  10163

Ellen M. Martin, Esq.
Mark G. Young, Esq.
Patterson, Belknap, Webb
   & Tyler LLP
1133 Avenue of the Americas
New York, New York  10036